UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles Boswell,
    Petitioner

vs

Warden, Lebanon Correctional
Institution,
    Respondent

Case No. 1:07cv702
(Dlott, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the revocation of his parole in December 2006. This matter is before the Court on the petition and "Merit Brief" (Docs. 1, 2), respondent's "Answer/Return Of Writ" with exhibits (Doc. 7), and petitioner's "traverse" in reply to the return of writ (Doc. 8).[1]

**Procedural Background**

Petitioner is in state custody pursuant to a "Judgment Of Conviction Entry" filed on November 4, 1982 by the Butler County, Ohio, Court of Common Pleas upon acceptance of petitioner's guilty plea in Case No. CR82-06-0406 to arson in violation

---

[1] In a separate Order issued this date, the undersigned has ruled on petitioner's pending non-dispositive motions to expedite disposition and to proceed to judgment. (*See* Docs. 5, 9).

of Ohio Rev. Code § 2909.03(A)(1) and involuntary manslaughter in violation of Ohio Rev. Code § 2903.04(A). (*See* Doc. 7, Exs. 1-2). Petitioner was sentenced to consecutive terms of imprisonment of three (3) to ten (10) years for the arson offense and ten (10) to twenty-five (25) years for the involuntary manslaughter offense. (*Id.,* Ex. 2).

Petitioner was released on parole on April 19, 1993 after serving over ten years of his sentence. (*See id.,* Ex. 3-a). In September 1993, the Ohio Adult Parole Authority (OAPA) granted petitioner permission to leave Ohio and move to Michigan, where he was required under the "Interstate Compact for the Supervision of Parolees and Probationers" to comply with the conditions of parole "as fixed by both the states of Ohio and Michigan." (*See id.,* Exs. 3-b, 3-c, 3-d). In an OAPA document entitled "Agreement to Return," which was signed by petitioner, petitioner agreed to comply with both states' parole conditions and to return "at any time to the state of Ohio" when "duly instructed" to do so by that state; petitioner further waived extradition to Ohio "from any jurisdiction in or outside the United States where [he might] be found and also agree[d] that [he would] not contest any effort by any jurisdiction to return [him] to the state of Ohio." (*Id.,* Ex. 3-c).

Apparently, on April 6, 1994, petitioner was arrested in Michigan for operating a vehicle while under the influence of alcohol. (*See id.,* Brief, p. 2). Petitioner posted bond on April 13, 1994, but on April 18, 1994, new charges of criminal sexual conduct were added. (*See id.,* Ex. 3-p, Ex. 4-d). On April 29, 1994, petitioner was sentenced to a 30-day jail term on a reduced charge stemming from the motor vehicle offense, and was "bound over to the Oakland County Circuit Court" for proceedings on the "new" criminal sexual conduct charges. (*See id.,* Ex. 3-p).

On May 27, 1994, the OAPA declared petitioner to be a parole violator effective April 6, 1994 and issued a warrant for petitioner's arrest, which was lodged as a detainer with the Michigan Department of Corrections. (*See id.,* Brief, p. 2 & Exs. 3-e, 3-f). Petitioner subsequently was convicted in the Oakland County case of two counts of criminal sexual conduct; he was sentenced on February 23, 1995 to two (2) to fifteen (15) year prison terms, which the court recommended should run "consecutive[ly] to parole violation." (*Id.,* Exs. 3-o, 4-d, 4-e).

It appears from the record that on or about January 1996, petitioner sent a letter to the Ohio Department of Rehabilitation and Correction (ODRC) inquiring whether

2

the Ohio detainer could be removed. (*See id.,* Exs. 3-g, 3-h). In response, ODRC Deputy Administrator Gail Price informed petitioner by letter dated January 16, 1996 that "it is not Ohio's policy to remove detainers on Ohio parolees incarcerated out-of-state" and that a "decision regarding your Ohio parole status will be made when we are advised you are eligible to be released or paroled to our detainer." (*Id.*, Ex. 3-g). The letter further provided: "You should be aware that just because Ohio has filed a detainer does not mean that you will be automatically returned to face the Ohio Parole Board. We will take into consideration your behavior and institutional adjustment while incarcerated." (*Id.*).

Thereafter, in June 2001, petitioner sent another letter to Gail Price requesting that the Ohio detainer be removed so that he could "further [his] rehabilitation in drug treament and improve [his] chance for parole." (*Id.,* Ex. 3-h). Petitioner explained that he had been denied parole four times by the Michigan Parole Board even though the Parole Eligibility Report attached to the letter reflected his "excell[e]nt institutional conduct, program participation, and work reports from supervisors." (*Id.*). Petitioner further stated that he actually was a "Level I prisoner" but had been incarcerated at a "Level II facility" because of the Ohio detainer, and that he thus was prevented from participating in certain drug treatment programs offered only at Level I prisons. (*Id.*).

By letter dated August 8, 2001, Price responded as follows to petitioner's request:

> After reviewing your letter of June 14, 2001 and the accompanying report from the Institution, I have decided to remove the Ohio detainer. This should allow you to progress through the Michigan system so that you may participate in the programs you desire.
>
> Please be advised that we have not relinquished jurisdiction in your case. We will want to be notified by Michigan 60 to 90 days prior to your release so that we may make any placement arrangements you desire. According to the Institution report, you want to return to Ohio.
>
> I hope this action assists you. If you return to Ohio, upon reporting to an Ohio parole officer, please advise that officer that you are also an Ohio parolee. We will try to coordinate your Michigan and Ohio cases

3

through dual supervision.

(*Id.,* Ex. 3-i).

In a separate letter dated November 21, 2001 to the "Record Officer/Detainer Clerk" of the Michigan prison where petitioner was incarcerated, Price stated:

> At this time Ohio has decided to remove the detainer filed against Charles Boswell. However, we are requesting that you notify us 60 to 90 days prior to this offender's release from your institution. We are also respectfully requesting that you notify us of his parole/residence plans and address.
>
> Mr. Boswell should be advised that by removing our detainer, we are not relinquishing any jurisdiction in his/her case. This offender still owes Ohio a supervision obligation and it is our intention that that obligation be fulfilled. We will again attempt placement via the Interstate Compact Agreement if that is what Mr. Boswell wishes.

(*Id.,* Ex. 3-j).

On November 1, 2006, the Michigan Department of Corrections discharged petitioner. (*See id.,* Ex. 4-d). Petitioner returned to Ohio, and on November 8, 2006 was arrested as a parole violator. (*See id.,* Exs. 3-e & 4-b; Ex. 5, p. 3).[2]

On November 14, 2006, petitioner was served with a Notification Of Release Violation Hearing. (*Id.,* Ex. 3-k). The notice informed petitioner he was charged with having committed the following parole violations:

> **Condition of Supervision Rule #1:** "I will obey federal, state and local laws and ordinances, including Chapter 2923 of the Revised Code relating to conduct involving firearms and other deadly weapons, and all

---

[2]Petitioner has averred that he was arrested despite the fact that he immediately notified the Ohio authorities of his release from prison and reported as instructed to the parole office in Chillicothe, Ohio on a daily basis from November 2 through November 8, 2006. (*See* Doc. 7, Ex. 5, p. 3; Doc. 8, pp. 1-2).

4

orders and rules and regulations of all County Common Pleas Court or the Department of Rehabilitation and Correction. I agree to conduct myself as a responsible law abiding citizen."

**To wit:** On or about January 27, 1995, you were convicted of Criminal Sexual Conduct in the Second Degree, a felony, in the State of Michigan.

**Condition of Supervision Rule #1:** "I will obey federal, state and local laws and ordinances, including Chapter 2923 of the Revised Code relating to conduct involving firearms and other deadly weapons, and all orders and rules and regulations of all County Common Pleas Court or the Department of Rehabilitation and Correction. I agree to conduct myself as a responsible law abiding citizen."

**To wit:** On or about January 27, 1995, you were convicted of Criminal Sexual Conduct in the Second Degree, a felony, in the State of Michigan.

**Condition of Supervision Rule #1:** "I will obey federal, state and local laws and ordinances, including Chapter 2923 of the Revised Code relating to conduct involving firearms and other deadly weapons, and all orders and rules and regulations of all County Common Pleas Court or the Department of Rehabilitation and Correction. I agree to conduct myself as a responsible law abiding citizen."

**To wit:** On or about April 29, 1994, you were convicted of Operating Under the Influence of Liquor in the State of Michigan.

**Condition of Supervision Rule #12:** "I also agree to the following Special Conditions, as imposed by the Adult Parole Authority"

**To wit:** On or about April 4, 1994, you failed to comply with the written order of the Adult Parole Authority to not consume alcohol.

(*Id.*).

The notice also informed petitioner that at the release violation hearing, he had the right to appear and testify on his own behalf; to present evidence on his behalf,

including evidence of mitigation; to request that witnesses be subpoenaed on his behalf; to confront and cross-examine witnesses against him; to seek disclosure of evidence presented against him; to request the appointment of counsel; and to receive a written statement of the evidence relied on for determining that a parole violation occurred and the sanction to be imposed. (*Id.*).

Petitioner signed the notification form, thereby indicating that he had read and understood it. He initialed the portions of the form admitting each of the violations charged against him. (*Id.*). He also checked that he would not be presenting any witnesses or documents and was not requesting representation or counsel at the hearing (*See id.*).

The hearing was held as scheduled on December 4, 2006, where evidence was presented in corroboration of the parole violation charges. (*See id.*, Ex. 3-l, "Release Violation Hearing Summary"). According to the "Release Violation Hearing Summary" prepared by Parole Board Hearing Officer Vernise Robinson, the defense submitted the following at the hearing in mitigation:

> The subject argued the rights of the State of Ohio to place a detainer on him and return him to Ohio as a result of his felony convictions in Ohio. The subject filed a complaint with the Public Defenders in which Chief Hearing Officer Jennifer Pribe has addressed[.]

(*See id.*).

Upon review of the evidence, the Hearing Officer found as follows:

> Based on the subject's admission of guilt and after review of the violation hearing report, this hearing officer finds subject guilty of all the [parole violation] charges.
>
> Recommendation from the [O]APA is revocation of parole. This hearing officer recommends revocation and that the subject be scheduled for a hearing for April 2007, actual February 2007.

(*Id.*, "Notice of Findings of Release Violation Hearing"). In the "Release Violation Hearing Summary," the hearing officer further found in evaluating the evidence:

6

> The subject is a 48 year old offender serving a 10-35 year sentence, for 1 count of Arson, and 1 count of Involuntary Manslaughter. The offender has a Max date of 02/03/2030.
>
> Mr. Boswell['s] supervision adjustment in the State of Michigan was described as fair up to his arrests for the charges outlined in this report. The offender was living with his brother and brother's fiancee and her minor children. One of the children is the victim of the felonious activity in the State of Michigan. The offender had maintained employment and refrained from ever testing positive for abusing illegal substances. Due to the serious nature of the felony convictions in the State of Michigan it is the recommendation of this Hearing Officer that the offender's parole be revoked. This hearing officer respectfully suggests that the parole board panel determine the suitable and appropriate amount of time to be served by the subject.

(*Id.*).

In accordance with the hearing officer's recommendation, a Revocation Order was issued, wherein petitioner's parole was revoked effective December 4, 2006 with a post-revocation hearing scheduled for April 2007. (*Id.*, Ex. 3-m).

In a letter dated January 9, 2007 addressed to OAPA's Chief Hearing Officer Jennifer Pribe from Chief Counsel of the Ohio Public Defender's Legal Division, it was requested that petitioner's parole be restored on the ground that "[r]evocation is inconsistent with the prior stated position of the [OAPA]," as set forth in the 2001 letters notifying petitioner and the Michigan Records Office of Ohio's release of its detainer. (*See id.*, Ex. 3-q). Pribe responded to this request by letter dated January 31, 2007, which provided in pertinent part:

> I received your formal appeal of the Revocation Order. . . . I sent it forward to the Chief of the Adult Parole Authority. . . for final review. We do not agree with the assessment that the letter from Gail Price, then Deputy Administrator, precludes the Adult Parole Authority from pursuing violations when Mr. Boswell returned to the state of Ohio following his Michigan incarceration. It also does not bar the Ohio Parole Board from taking action on his violation behavior. The decision

7

of the Hearing Officer will stand.

(*Id.*, Ex. 3-r).

On January 19, 2007, petitioner filed a petition for writ of habeas corpus with the Pickaway County, Ohio, Court of Common Pleas challenging his parole revocation. He essentially claimed in the petition that the "decision to revoke [his] parole for the Michigan conviction (which occurred more than a decade ago) [was] inconsistent with the intent of the OAPA as expressed in its letters of August 8, 2001 and November 21, 2001 . . . to return petitioner to Ohio supervision either in Ohio or pursuant to the Interstate Compact Agreement in Michigan." (*Id.*, Ex. 5). The State filed a motion to dismiss, which was granted on March 27, 2007. (*Id.*, Exs. 6, 7).

Petitioner appealed to the Ohio Court of Appeals, Fourth Appellate District. (*See id.*, Ex. 8). On April 23, 2007, the Ohio Court of Appeals *sua sponte* dismissed the appeal because petitioner had failed to file certain affidavits required by Ohio Rev. Code § 2969.25 for inmates filing an appeal of a civil action against a government entity. (*Id.*, Ex. 9).

Thereafter, petitioner filed another notice of appeal and motion for leave to file a delayed appeal to the Ohio Court of Appeals, Fourth Appellate District. (*Id.*, Exs. 10-11). On June 8, 2007, the Court of Appeals denied petitioner's motion for delayed appeal on the ground that "there are no provisions in the Ohio Rules of Appellate Procedure that permit the filing of a delayed appeal in a civil case" or, more specifically, cases involving a petition for writ of habeas corpus. (*Id.*, Ex. 12). Apparently, petitioner did not attempt to appeal this decision to the Ohio Supreme Court. (*See id.*, Brief, p. 5).

Petitioner next filed the instant petition for writ of habeas corpus in August 2007. (Doc. 1). Petitioner claims his parole was revoked in violation of due process based on the following grounds:

(1) The OAPA "failed to exercise reasonable diligence to conduct revocation proceedings, despite active knowledge of Petitioner's whereabouts, having issued a Warrant May 27, [199]4, lodged a detainer on the warrant @ December, 1995, [d]eclared him a parole violator on May 27, [199]4, lifted the detainer and cancelled the warrant on Aug. 8,

8

2001 and on Nov. 21, 2001, and did not conduct revocation proceedings until Dec. 4, 2006."

(2) Parole was revoked without notice. Specifically, "[t]he OAPA ruled, on Aug. 8, 2001 and Nov. 21, 2001, that, based on the facts, Petitioner would be returned to supervision as the sanction for the violation of parole, immediately upon his release from Michigan custody. Instead, upon reporting as ordered to the OAPA, after 7 straight days of reporting, and where the OAPA representative stated they had no files on Petitioner, he was arrested without warning and subsequently, the parole was revoked."

(*Id.,* pp. 6-7).

In the return of writ, respondent contends that petitioner's claims for relief are barred from review because they were procedurally defaulted in the state courts. (Doc. 7, Brief, pp. 6-9). Alternatively, respondent argues that petitioner is not entitled to habeas relief because his claims are meritless. (*Id.,* pp. 9-14).

## OPINION

### Petitioner Has Waived The Claims Raised Herein Challenging His Parole Revocation Due To His Procedural Defaults In The State Courts

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

9

If petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed procedural defaults at both the state appellate court and supreme court levels.

Petitioner first procedurally defaulted at the state appellate court level when (1) he failed to attach certain affidavits mandated by Ohio statute to his initial timely-filed notice of appeal in the state habeas matter, which resulted in the *sua sponte* dismissal of that appeal; and (2) his subsequent motion for delayed appeal, which was filed in conjunction with a renewed notice of appeal that included the requisite affidavits, was dismissed on the ground that delayed appeals are not available in civil habeas actions.

It is well-settled that on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62. The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813.

10

Such a procedural default does not bar consideration of the federal claim unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. Moreover, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993).

Here, the Ohio Court of Appeals was the last state court to issue reasoned decisions addressing petitioner' attempted appeals from the dismissal of his petition for writ of habeas corpus. In both instances, the court relied on a firmly established and regularly followed state practice in dismissing the appeal–i.e., dismissing the first appeal based on petitioner's non-compliance with mandatory filing requirements set forth in Ohio Rev. Code § 2969.25, and dismissing petitioner's subsequent motion for delayed appeal because delayed appeals are not permitted under Ohio R. App. P. 5(A) in civil habeas actions. (*See* Doc. 7, Exs. 9, 12). Therefore, it appears that the adequate and independent state ground doctrine may be applied in this case as a procedural bar to review based on procedural defaults committed by petitioner at the state appellate court level.

In any event, even assuming, *arguendo,* that petitioner had not committed any procedural default which could constitute an adequate and independent state ground for the denial of relief by the state appellate court, petitioner committed a second procedural default at the state supreme court level by failing to appeal further from the Ohio Court of Appeals' dismissal of petitioner's attempted appeals. *See Leroy,* 757 F.2d at 97, 99-100.

Because of his procedural defaults, petitioner did not provide the Ohio Supreme Court with an opportunity to correct the alleged constitutional errors presented herein. Therefore, he has waived his claims for federal habeas relief in the absence of a showing of "cause" for his defaults and actual prejudice as a result of the alleged errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,*

456 U.S. at 129; *Sykes,* 433 U.S. at 87. No such showing has been made in this case.

Petitioner has argued in his "traverse" brief that the waiver bar to review should be excused here because the "issues herein [challenging his parole revocation] are not cognizable in state court." (Doc. 8, pp. 2-3). The Court rejects this argument. Contrary to petitioner's contention and despite the common pleas court's refusal to consider petitioner's habeas petition on the ground that the "issues raised by Petitioner are not cognizable in habeas corpus" (*see* Doc. 7, Ex. 7), claims challenging parole revocations may be raised in a state habeas corpus petition pursuant to Ohio Rev. Code § 2725.01 *et seq.,* or in a state writ of mandamus pursuant to Ohio Rev. Code § 2731.01 *et seq. See Papenfus v. Tibbals*, 289 F.Supp.2d 897, 900-01 (N.D. Ohio 2003) (and cases cited therein); *see also Kendrick v. Brunsman,* No. 2:07cv1037, 2007 WL 4246206, at *4-5 (S.D. Ohio Nov. 28, 2007) (unpublished) (Frost, J.; King, M.J.); *Hill v. Noble Corr. Instit.,* No. 2:07cv222, 2007 WL 915196, at *2 n.1 (S.D. Ohio Mar. 26, 2007) (unpublished) (Report & Recommendation) (Kemp, M.J.), *adopted,* 2007 WL 2027330 (S.D. Ohio July 9, 2007) (unpublished) (Graham, J.).[3]

Accordingly, in sum, the Court concludes that petitioner is not entitled to relief because he has waived the claims alleged in the instant petition for writ of habeas corpus due to his procedural defaults on appeal from the denial of his state habeas petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's claims for relief, which this Court has concluded are barred from review on procedural waiver grounds, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable

---

[3] Because petitioner filed a state habeas petition, which was rejected by the Pickaway County common pleas court, and committed procedural defaults on appeal from the common pleas court decision, it appears that at this juncture, the habeas and mandamus remedies cited in *Papenfus* are no longer available or otherwise futile for petitioner to pursue. Therefore, the petition is subject to dismissal on waiver, as opposed to exhaustion, grounds.

two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000). Although, therefore, it is not necessary to address the second part of the *Slack* test, the Court further finds pursuant to that standard that "jurists of reason" would not find it debatable whether petitioner has stated a viable constitutional claim for relief. *See Slack,* 529 U.S. at 484.

First, to the extent petitioner alleges that he was denied due process because the OAPA failed to exercise reasonable diligence in conducting the revocation proceedings, it is clear from the record that the OAPA in fact acted promptly, arresting petitioner on the parole violation charges on November 8, 2006, within a week of his return to Ohio; serving him with notice of the parole violation hearing six days later on November 14, 2006; and holding the revocation hearing soon thereafter on December 4, 2006. Although the parole violation charges were initially lodged in May 1994, petitioner was incarcerated in Michigan at that time and was not discharged from Michigan's custody until November 1, 2006.[4]

Second, the record does not give rise to a viable claim that the OAPA lacked authority to revoke petitioner's parole based on the removal of the detainer in 2001. A detainer is a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution to either hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash,* 473 U.S. 716, 719 (1985). Generally, detainers are filed so that the authority

---

[4]Because petitioner was in the custody of another state during the over twelve-year period that followed the OAPA's declaration of parole violation in May 1994, petitioner is unable to prevail on any claim that he was entitled to a disposition of the charges before his release from Michigan's custody and return to Ohio on November 1, 2006. The Supreme Court has held that Article III of the Interstate Agreement of Detainers, which gives a prisoner in one State the right to demand speedy disposition of "any untried indictment, information or complaint" that is the basis of a detainer lodged against him by another State, does not apply to detainers based on parole or probation violation charges. *Carchman v. Nash,* 473 U.S. 716 (1985). In so holding, the Court reasoned in part that "it often may be desirable to delay rather than to expedite disposition" of such charges, because in "cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation;" in conducting this inquiry, which uniquely entails a "prediction as to the ability of the individual to live in society without committing antisocial acts," the "parolee's institutional record can be perhaps one of the most significant factors." *Id.* at 733 (quoting *Moody v. Daggett,* 429 U.S. 78, 89 (1976)).

which has placed the detainer can eventually obtain custody of the prisoner for the purpose of executing additional sentences imposed against the prisoner, or prosecuting outstanding criminal charges or outstanding parole or probation violation charges. *See id.* at 719, 727.

Here, the removal of the detainer merely operated as a relinquishment of Ohio's right to have petitioner held in Michigan as a means of ensuring petitioner would be made available to Ohio on the outstanding parole violation charges. The detainer's removal did not result in the dropping of any of those charges against petitioner. Indeed, it is clear from the record that the detainer was removed only at petitioner's request so that he might be viewed as a better candidate for participation in certain Michigan drug treatment programs or for parole release in Michigan. In removing the detainer, the ODRC expressly advised petitioner and the Michigan "Record Officer/Detainer Clerk" that Ohio was "not relinquishing any jurisdiction" over petitioner's case and that the ODRC needed to be notified 60 to 90 days before petitioner's release from prison in Michigan. (*See id.,* Exs. 3-i, 3-j). Michigan was further advised that petitioner "still owes Ohio a [parole] supervision obligation and it is our intention that that obligation be fulfilled." (*Id.,* Ex. 3-j).

Finally, petitioner has not alleged a viable claim that he was denied due process because his parole was revoked without notice. The letters notifying petitioner and Michigan authorities of the detainer's removal arguably contained certain vague statements that could be interpreted by petitioner as meaning that he would continue on parole either in Michigan or Ohio after his discharge from prison in Michigan. However, the OAPA was not precluded from pursuing, or even reinstating, the parole violation charges upon petitioner's return to Ohio where he remained under continued parole supervision. Petitioner received sufficient notice of the charges against him when soon after his return to Ohio in November 2006, he was arrested and served with the formal "Notification of Release Violation Hearing," which specifically identified each of the parole violation charges and informed petitioner of his rights at the hearing to be held on December 4, 2006. *See Morrissey v. Brewer,* 408 U.S. 471 (1972).[5]

---

[5]Because parole revocation only deprives the parolee "of the conditional liberty properly dependent on observance of special parole restrictions," the full panoply of due process rights accorded a defendant in a criminal prosecution do not apply. *Morrissey,* 408 U.S. at 480. Although a preliminary hearing to determine if there is probable cause or reasonable grounds to believe the arrested parolee committed a parole violation is typically required, *see id.* at 485-87,

14

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis. See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 8/25/08

Timothy S. Hogan
United States Magistrate Judge

cbc

J:\BRYANCC\2008 habeas orders\07-702denypet.parole-rev.wpd

---

the Supreme Court has held that no preliminary hearing is required in cases such as this, where the parolee has been convicted of and incarcerated for a subsequent offense committed while on parole. *Moody v. Daggett,* 429 U.S. 78, 86 n.7 (1976).

The Supreme Court held in *Morrissey* that the minimum requirements of due process for the final revocation hearing include: (a) written notice to the parolee of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) the opportunity for the parolee to be heard in person and to present witnesses and documentary evidence; (d) the parolee's right to confront and cross-examine adverse witnesses, unless good cause is found by the hearing officer for not allowing confrontation; (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinders of the evidence relied on and reasons for revoking parole. *Morrissey,* 408 U.S. at 489. At this revocation hearing, which must be held within a "reasonable time after the parolee is taken into custody," the parolee is entitled to be heard and to present evidence showing he did not violate his parole conditions or, if he did, circumstances in mitigation suggest the violation does not warrant revocation. *Id.* at 488. Due process is satisfied if the procedures followed by the parole board comply with the minimum standards set forth in *Morrissey* and the parolee admits to the parole board that he committed the claimed parole violations and those violations are reasonable grounds for revoking parole under state standards. *Id.* at 490.

Here, petitioner has alleged no facts even remotely suggesting that the minimum standards of due process established in *Morrissey* were not met. Indeed, it appears clear from the record that due process was satisfied in this case because the hearing that was held comported with *Morrissey* and petitioner's admitted parole violations constituted reasonable grounds for revoking petitioner's parole. *See id.*

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Charles Boswell,
    Petitioner

vs                                       Case No. 1:07cv702
                                         (Dlott, J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Charles Boswell 170-943<br>Lebanon Corr. Inst.<br>PO Box 56<br>Lebanon, OH 45036 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Transfer from service label) | 7007 0710 0000 8130 4952 |

PS Form 3811, August 2001  Domestic Return Receipt  102595-02-M-1540

1:07cv702 Doc.# 10